Joel B. Robbins, Esq. (011065)
Jesse M. Showalter, Esq. (026628)
Lauren E. Channell, Esq. (033484)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 285-0100
Fax: (602) 265-0267
joel@robbinsandcurtin.com
jesse@robbinsandcurtin.com
lauren@robbinsandcurtin.com

Benjamin Taylor, Esq. (023868)
**TAYLOR & GOMEZ, LLP**
2600 N. 44th Street, Suite B-101
Phoenix, Arizona 85008
Tel: (602) 325-8007
Fax: (602) 957-3257
bt@taylorgomezlaw.com

*Attorneys for Plaintiff Robert Johnson*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Johnson, an individual, | No. 2:19-cv-02827-JAT-JZB |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | (Tort – Civil Rights) |
| City of Mesa, a municipality; Jhonte Jones, an individual; Rudy Monarrez, an individual, and Ernesto Calderon, an individual, | (Jury Trial Demanded) |
| Defendants. | |

Plaintiff Robert Johnson complains against Defendants City of Mesa, Jhonte Jones, Rudy Monarrez, and Ernesto Calderon and alleges as follows:

**PARTIES**

1. Plaintiff Robert Johnson is a resident of Maricopa County, Arizona.

2. Defendant City of Mesa is a municipality and a political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona. It is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

3. Defendant Jhonte Jones is an individual and a resident of Maricopa County, Arizona.

4. At all times alleged herein, Defendant Jones was a police officer employed by the City of Mesa acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

5. Defendant Rudy Monarrez is an individual and a resident of Maricopa County, Arizona.

6. At all times alleged herein, Defendant Monarrez was a police officer employed by the City of Mesa acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

7. Defendant Ernesto Calderon is an individual and a resident of Maricopa County, Arizona.

8. At all times alleged herein, Defendant Calderon was a police officer employed by the City of Mesa acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

9. For Plaintiff's claims under Arizona state law, Defendant City of Mesa is responsible for the conduct of its officers and employees, including Defendants Jones, Monarrez, and Calderon and is liable to Plaintiff for the damages resulting from their conduct under the theory of *respondeat superior*.

10. In this Complaint, Defendants Jones, Monarrez, and Calderon are referred to collectively as the "Officer Defendants."

## JURISDICTION AND VENUE

11. The amount in controversy exceeds the jurisdictional limitations of this Court.

12. This Court has jurisdiction over Plaintiff's federal civil rights claim under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

13. This Court has supplemental jurisdiction over claims arising under the laws of the State of Arizona under 28 U.S.C. § 1367(c).

14. The events giving rise to this action occurred in Maricopa County, Arizona. Defendant City of Mesa is a political subdivision of the State of Arizona, and the Officer Defendants all reside within Maricopa County, Arizona. Thus, venue is proper in the District of Arizona under 28 U.S.C. § 1391(b).

15. As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim under A.R.S. § 12-821.01 upon Defendants City of Mesa on November 13, Defendant Jones on November 17, and Defendants Monarrez and Calderon on November 19, 2018. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of law.

## JURY DEMAND

16. Plaintiff demands a jury trial.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### The Attack on Plaintiff Robert Johnson

17. On May 23, 2018, Plaintiff Robert Johnson and Erik Reyes were in the process of exiting an apartment complex after having peacefully retrieved Reyes' personal property from Reyes' ex-girlfriend.

18. As they approached the complex's elevator, a Mesa police officer exited it.

19. The officer directed Plaintiff to stand near the balcony by the elevators.

20. Plaintiff complied with the officer's request to stand near the balcony by the elevators and began talking on his cell phone.

*(Left margin: ROBBINS & CURTIN, P.L.L.C., 301 East Bethany Home Road, Suite B-100, Phoenix, Arizona 85012, Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267)*

21. Upon information and belief, Officer Calderon told Plaintiff not to leave via the elevator and Plaintiff complied.

22. While Plaintiff was talking on the phone, Defendant Jones asked to search him for weapons.

23. Plaintiff consented to the search, offered no resistance as the officer performed his search, and advised the officer that he might have a knife. While Defendant Jones searched Plaintiff to his satisfaction, Plaintiff continued talking on the phone.

24. When the search was completed, an officer asked Plaintiff to move to the wall across from the balcony.

25. Plaintiff complied with the officer's request.

26. Plaintiff continued talking on his phone to his mother and girlfriend.



27. An officer then asked Plaintiff to sit against the wall.

28. Plaintiff eventually lowered himself against the wall, making himself vulnerable to the officers and reducing his capacity to protect himself.

29. As Plaintiff leaned against the wall, multiple Mesa officers, including the Officer Defendants, rapidly approached him from all sides.

30. Defendant Jones yelled "all the way down" as he moved toward Plaintiff.

31. Within seconds, the Officer Defendants and another officer violently attacked Plaintiff, striking him repeatedly. Defendant Jones appeared to do a knee strike and then

punched Plaintiff numerous times, including strikes to the head.  Upon information and belief, Defendant Calderon punched Plaintiff at least once in the head and pulled Plaintiff's legs out.  Upon information and belief, Defendant Monarrez punched Plaintiff.



32.     After the beating, as he was being placed in the elevator, Plaintiff attempted to talk with the officers, at which time he was shoved into the door, placed on the ground, shackled, and gagged with a "spit mask."



33.     Following the attack on Plaintiff, the Officer Defendants wrongfully arrested Plaintiff and wrongfully charged him with disorderly conduct and hindering prosecution.

34.     The Officer Defendants knew that Plaintiff had committed no crime and that there was no probable cause for his arrest.

35.     As a result of the Officer Defendants' wrongful conduct, Plaintiff sustained serious injuries and emotional distress, and he incurred medical expenses, other economic losses, and general damages.

**The City of Mesa's Policies, Customs, and Procedures**

36.     Defendant City of Mesa is responsible for training and supervising Mesa police officers, including the Officer Defendants, regarding the use of force.

37.     Defendant City of Mesa has a policy, custom, or procedure for training and allowing its officers to "escalate" situations (*i.e.*, to use more force than is reasonably necessary or appropriate to respond to situations).

38.     Defendant City of Mesa has a policy, custom, or procedure of failing to review use of force reports and failing to discipline officers involved in excessive force incidents, thereby turning a blind eye and creating a culture of impunity that encourages officers to use excessive force.

39.     Defendant City of Mesa has a policy, custom, or procedure of allowing its police officers to purge their files of complaints, purposefully encouraging the destruction of the records evidencing officer misconduct.

40.     Defendant City of Mesa has adopted and pursued its policy, custom, and procedure of purging files in order to avoid liability for its unconstitutional use of force policies, to keep its officers' misdeeds out of the public eye, and to prevent litigants in cases like this one from proving that it has unconstitutional policies, customs, and procedures.

41.     George Gascon was the police chief from June 2006 until June of 2009. He was felt to be too soft, and when he retired, the City chose Frank Milstead to lead the Department. The rank-and-file officers said at the time that they felt like the rules had been relaxed and they could do their jobs knowing that he "had their backs."

42.     With Milstead came Heston Silbert who, according to witnesses, told the Mesa officers that he wanted them to establish their reputations for being tough out on the streets.

43. During this time, Milstead instructed the officers that they should purge their files of complaints.



*Off the Cuff* – Chief Milstead

44. After Milstead left, the City of Mesa had three police chiefs between 2015 to 2017.

45. Ramon Batista became the Mesa Police Chief in June 2017.

46. Following the attack on Plaintiff Robert Johnson, Chief Batista made a statement to the press that, based upon the video of the incident, this type of conduct was not acceptable.

47. Chief Batista acknowledged that the Mesa Police Department's policy permitting head strikes was excessive force.

48. In a 2019 union survey, one respondent summed up the City's municipal liability for civil rights violations, explaining that the previous administration had "emphasized kicking ass and scaring the public" and "turned a blind eye to everything."

> I feel the Chief is in a no-win situation. **Under the previous admin our moral compass went sideways. We had an A/C [assistant chief] that emphasized kicking ass and scaring the public, and a Chief who turned a blind eye to everything. Our academy went from training guardians to training 'Spartans.'** Our detectives became lazy and civilian staff

became bitter. The line-level Officers were happy because we had someone 'speaking for us . . .' but in the end neither Milstead nor Silbert really cared about anyone but themselves.

**Now . . . we face federal criminal probes, lawsuits, and civil rights inquiries. All of this because [former Mesa Assistant Chief Heston] Silbert wanted to 'kick ass.'** In comes Batista who should not have been selected by the City, especially because they knew about all of the brewing issues. He comes into a mess and is now in charge of dealing with it. He has to make decisive moves to keep the City happy, the public trust, and keep the DOJ off our backs. I don't like some of the things he does or says, but then again, I never agreed 100% with any Chief. I don't think he is trying to 'screw the department' I don't see him as some 'libtard' as he's been called. He was served a floating dumpster fire and told to deal with it . . . The MPA and FOP are screwing us by convincing Officers Batista is the bad guy and throwing around phrases like 'vote of no confidence.'[1]

49. The City of Mesa asked Rick Romley to conduct an internal affairs investigation into the attack on Plaintiff Robert Johnson. One of Romley's conclusions is that Mesa's policy of allowing officers to "purge" their files leaves the City and the public immune to knowledge of prior police misconduct. This culture of secrecy fosters this type of behavior.

50. The City of Mesa's unconstitutional policies, customs, and procedures were the moving force behind the deprivation of Plaintiff's rights, as well as the rights of individuals in at least the following cases: *Tai v. City of Mesa, et al.*, USDC Case No. 2:14-cv-01170-DGC; *Krstic v. Gransee, et al.*, USDC Case No. 2:16-cv-02830-MHB; *Sweet v. City of Mesa, et al.*, USDC Case No. 2:17-cv-00152-GMS; and *Lane v. City of Mesa, et al.*, USDC Case No. 2:19-cv-00852-SMB.

---

[1] *See Mesa Police Scorn Chief's Reforms in Survey Leaked Ahead of 'No Confidence' Vote*, Phoenix New Times (May 3, 2019), https://www.phoenixnewtimes.com/news/mesa-police-association-survey-shows-shocking-departmental-culture-11280486 (emphasis added).

51.     As an additional example, Plaintiff's counsel previously represented a young unarmed African American man who was shot in the back while fleeing from a Mesa Police Officer. As the young man jumped up onto a brick wall, a Mesa Police Officer shot him.

52.     The officer involved had a prior instance of excessive force where he shot a hostage.  He also had participated in misconduct involving drugs.

53.     During the litigation of that case, an old memorandum came to light where the Mesa Police Officer had told another officer that he wanted to "kill a ni**er" before he retired.  The Mesa Officer was part of a group of Mesa Police Officers that kept a clubhouse where photos of prostitutes and victims of police violence were plastered on the walls.  The scandal that surrounded the officer and the Mesa Police Department led to the shake-up of the Department in the mid-1990s. Though this officer was involved in two bad shootings and other misconduct, he was not fired.

## COUNT I

### Assault and Battery

### (Against Defendants City of Mesa, Jones, Monarrez, and Calderon)

54.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

55.     At all relevant times, the Officer Defendants and other Mesa officers were acting in the course and scope of their employment for Defendant City of Mesa.

56.     The Officer Defendants assaulted and battered Plaintiff.

57.     The Officer Defendants intentionally caused harmful or offensive contact to Plaintiff.

58.     The assault and battery were not justified.

59.     As a result of the assault and battery, Plaintiff sustained serious injuries and emotional distress, and he incurred medical expenses, other economic losses, and general damages.

## COUNT II

### Negligence

### (Against Defendant City of Mesa)

60. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

61. Defendant City of Mesa owes a duty of care to members of the public with whom its officers come into contact and/or investigate, including Plaintiff.

62. Defendant City of Mesa breached this duty by failing to adequately supervise its officers, including the Officer Defendants.

63. Defendant City of Mesa breached this duty by failing to adequately train its officers with respect to the seizure of suspects and the use of force.

64. Defendant City of Mesa breached this duty by failing to adopt adequate and reasonable policies and training with respect to the seizure of suspects and the risks of using force.

65. As a result of Defendant City of Mesa's breaches, Plaintiff sustained serious injuries and emotional distress, and he incurred medical expenses, other economic losses, and general damages.

## COUNT III

### 42 U.S.C. § 1983 – Violation of Fourth Amendment Right to be Free of Unlawful Seizures and Excessive Force

### (Against Defendants Jones, Monarrez, and Calderon)

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. Plaintiff has a Fourth Amendment right to be free from unlawful searches and seizures and from excessive force.

68. Defendants Jones, Monarrez, and Calderon violated Plaintiff's Fourth Amendment rights when they attacked and beat Plaintiff.

69. Because Defendants' actions were done knowingly, intentionally, and maliciously, Plaintiff is entitled to recover compensatory and punitive damages.

## COUNT IV

## 42 U.S.C. § 1983 – *Monell* Claim

## (Against Defendant City of Mesa)

70. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

71. Defendant City of Mesa was deliberately indifferent to the proper training and supervision of their employees, including the Officer Defendants, regarding the appropriate use of force.

72. The City of Mesa has policies, customs, or procedures that were deliberately indifferent to the rights of citizens to be free from excessive force, including the following:

    a. Failing to train its officers regarding the proper use of force;

    b. Allowing and encouraging Mesa Police Officers to escalate situations by using force that was not reasonable or necessary under the circumstances;

    c. Failing to review use of force reports and failing to adequately investigate, discipline, and retrain officers involved in excessive force incidents, and therefore creating a culture of impunity that encouraged officers to use excessive force;

    d. Maintaining a head strike policy which the City knew exposed members of the public to a serious and unreasonable risk of harm and which, notably, Chief Batista acknowledged as constituting excessive force after the subject attack on Plaintiff; and

    e. Allowing and encouraging officers to purge their files of complaints, which purposefully concealed the officers' misconduct, and the City's knowledge of that misconduct, from litigants and from the public.

73. The City of Mesa was deliberately indifferent to the Fourth Amendment rights of members of the public, including Plaintiff.

74. The City of Mesa's unconstitutional policies, customs, and procedures caused or contributed to the deprivation of Plaintiff's rights under the Fourth Amendment.

75. The City of Mesa is liable for all damages arising from the constitutional violations it caused.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For special damages, including but not limited to current and future medical fees and expenses, lost wages, and other economic losses;

B. For general and compensatory damages, including but not limited to pain and suffering, emotional distress, and loss of enjoyment of life;

C. For punitive damages against Defendants Jones, Monarrez, and Calderon;

D. For taxable costs and pre- and post-judgment interest to the extent permitted by law;

E. For attorneys' fees and costs under 42 U.S.C. § 1988 to the fullest extent permitted by law; and

F. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: October 8, 2019

**ROBBINS & CURTIN, p.l.l.c.**

By: /s/ Joel B. Robbins
Joel B. Robbins
Jesse M. Showalter
Lauren E. Channell
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012

/s/ Benjamin Taylor
Benjamin Taylor
2600 N. 44th Street, Suite B-101
Phoenix, Arizona 85008

*Attorneys for Plaintiff Robert Johnson*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Kim S. Alvarado, Esq.
City of Mesa Attorney's Office
MS-1077
P.O. Box 1466
Mesa, Arizona 85211-1466
kim.alvarado@mesaaz.gov
*Attorney for Defendants City of Mesa and Rudy Monarrez*

Kathleen L. Wieneke, Esq.
Christina Retts, Esq.
Wieneke Law Group, PLC
1095 W. Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
kwieneke@wienekelawgroup.com
cretts@wienekelawgroup.com
*Attorneys for Defendant Jhonte Jones*

Daniel J. O'Connor, Esq.
Karen J. Stillwell, Esq.
O'Connor & Dyet, P.C.
7955 South Priest Drive
Tempe, Arizona 85284
daniel.oconnor@occlaw.com
karen.stillwell@occlaw.com
*Attorneys for Defendant Ernesto Calderon*

Benjamin Taylor, Esq.
TAYLOR & GOMEZ, LLP
2600 N. 44th Street, Suite B-101
Phoenix, Arizona 85008
bt@taylorgomezlaw.com
*Co-counsel for Plaintiff Robert Johnson*

/s/ Julie W. Molera

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267